FILED
2011 Mar-17  AM 11:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

STACY GAITHER

       Plaintiff,

v.                                                                        CV 10-PT-1876-M

MAD DOGG ATHLETICS, INC.,
et al

       Defendants.

**MEMORANDUM OPINION**

This cause comes on to be heard on the Motion for Judgment on the Pleadings filed by

defendant Mad Dogg Athletics, Inc. on January 20, 2011.

This court has considered certifying question(s) in this case to the Supreme Court of

Alabama.  On reflection, the court has determined not to do so.  This preliminary decision is

somewhat premised on this court's concern about imposing on said Supreme Court.[1]   Before

making this preliminary decision, this court has considered the following language in Eleventh

Circuit Court of Appeals cases:

> "Where there is doubt in the interpretation of state law, a
> federal court may certify the question to the state supreme court to
> avoid making unnecessary *Erie* guesses and to offer the state court
> the opportunity to interpret or change existing law." *Union
> Planters Bank, N.A. v. New York*, 436 F.3d 1305, 1306 (11th Cir.
> 2006) (quotation marks and citation omitted). . . .  However, the
> decision to certify a question is discretionary.  *Escareno v. Noltina
> Crucible and Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir.
> 1998).

---

[1]  This court already has one pending certification which that court graciously accepted.  This court is
ultimately convinced that the Alabama Supreme Court would likely reject the plaintiff's arguments.

*Harden v. State Farm Mut. Auto. Ins. Co.*, 339 Fed. Appx. 897, 901 (11th Cir. 2009) (per curiam).

. . . .

> "Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916-17 (11th Cir. 1995) (footnote omitted).  Because this case presents a question of first impression under Georgia law, we seek guidance from the Supreme Court of Georgia and certify the questions set out below.

*CSX Transp., Inc. v. City of Garden City*, 325 F.3d 1236, 1239-40 (11th Cir. 2003).

> . . . Where the highest court-in this case, the Florida Supreme Court-has spoken on the topic, we follow its rule.  Where that court has not spoken, however, we must predict how the highest court would decide this case. *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n. 5 (11th Cir. 2005).

*Molinos Valle Dell Cigaq, etc. v. Lama*, ___ F.3d ___, (11th Cir. Feb. 24, 2011).

Although this may arguably be a case of first impression under Alabama law, that may be because nobody else has ever pursued what may be an attempted stretch of the law in this specific type case.  While this court will not call plaintiff's claim frivolous, it is highly questionable and, in this court's opinion, attempts to unduly extend the recognized principles of law involving "voluntary undertakings" and "foreseeability."

Facts[2]

Mad Dogg Athletics, Inc. ("Mad Dogg") was instrumental in developing and popularizing stationary exercise bicycles known as "spinners" or "spinning bikes."  Mad Dogg manufactures,

---

[2] As to various facts and positions, the court will significantly quote uncontested statements from the filings of the parties.

among other things, spinning bikes known as "Johnny G Spinner Sport" bikes.  Sometime before the incidents giving rise to this suit, Mad Dogg discovered that counterfeit versions of its stationary bikes, including the "Johnny G Spinner Sport" model, were on the market.  Mad Dogg investigated and reported the counterfeits to the United States Immigration and Customs Enforcement ("ICE") which pursued criminal indictments against the counterfeiters.

Stacey Gaither ("Gaither") received a counterfeit "Johnny G Spinner Sport" bike as a gift in late 2007.  The bike was purchased from a vendor on the online marketplace eBay.  Gaither alleges that she was injured by the stationary bike on May 12, 2008, when the bike seat tilted backwards and threw her off the bike.  She filed a product liability action against Mad Dogg in the Circuit Court of St. Clair County on February 19, 2010.  Mad Dogg removed the action to this court based upon the court's diversity jurisdiction under 28 U.S.C. § 1332.

After receiving the complaint, Mad Dogg investigated and discovered that the stationary bike that injured Gaither was a counterfeit of its "Johnny G Spinner Sport" bike.  Gaither has now conceded that the bike was a counterfeit produced without any original or component Mad Dogg parts, specifications, or designs, and she has amended her original complaint to allege that Mad Dogg breached its alleged duties to warn her about the counterfeits and to warn her about the defective nature of the counterfeits.

Gaither alleges that defendant prior to the plaintiff's injury:

(a)    purchased one of the counterfeit bikes from the eBay seller suspected of selling the counterfeits,

(b)    examined the bike to determine that it was in fact a counterfeit,

(c)    notified law enforcement of its findings,

(d)    worked with law enforcement to examine other seized bikes that were part of the same counterfeiting operation, and

(e)    continued to cooperate with law enforcement to stop the counterfeiting.

Positions
of
Parties

Gaither asserts that Mad Dogg owed her two separate duties which it breached: (1) a duty to warn her of the counterfeiting activities of another entity, and (2) a duty to warn her that the counterfeits manufactured by that entity might be defective.[3]  Gaither asserts that the court should impose these duties upon Mad Dogg because the injury to her was foreseeable under the analysis promulgated by *Patrick v. Union State Bank*, 681 So.2d 1364 (Ala. 1996) (discussing three factors used to determine whether a duty exists under the foreseeability analysis).  Gaither also asserts that Mad Dogg voluntarily undertook these duties by investigating, discovering, and reporting to the authorities the presence of counterfeit bikes in the market.

Mad Dogg asserts that it owed Gaither no duty to warn her that counterfeits of its bike were being sold.  Mad Dogg also asserts that it owed Gaither no duty to warn her that the counterfeits manufactured by another entity might be defective.  Mad Dogg also argues that  no duty arises under Alabama tort law if a voluntary action inures to the benefit of the one taking the action and not to the benefit of another.

Discussion

Alabama statutory law with reference to products liability is found at Alabama Code Section 7-2-314 (1975) and at Alabama Code § 6-5-500 (1993).  The parties who may be held liable under these provisions include manufacturers and sellers.  In *Bryan v. Alabama Power Co.*, 20 So.3d 108 (Ala. 2009), the court stated:

This Court has stated: "Alabama clearly recognizes the

---

[3]Plaintiff alleges that defendant could have discovered the purchase by her.

doctrine that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith." *Dailey v. City of Birmingham,* 378 So.2d 728, 729 (Ala. 1979). "However, the existence of a voluntarily assumed duty through affirmative conduct is a matter for determination in light of all the facts and circumstances." *Parker v. Thyssen Mining Constr., Inc.*, 428 So.2d 616, 618 (Ala. 1983). The relevant inquiry often involves the scope, as well as the existence, of the duty assumed. See, e.g., *Springhill Hosps., Inc. v. Larrimore,* 5 So.3d 513, 516 (Ala. 2008) (noting that the scope of a pharmacist's voluntary undertaking is a fact-specific inquiry); *Dailey v. Housing Auth. for Birmingham Dist.*, 639 So.2d 1343, 1346 (Ala. 1994) (discussing the limits of the scope of a duty voluntarily assumed where landlord hired security guard); *Hodge v. United States Fid. & Guar. Co.*, 539 So.2d 229, 230 (Ala. 1989) (workers' compensation insurance case in which this Court noted that the plaintiff bears the burden of proving the scope of the duty voluntarily assumed). Furthermore, the underlying principle that the "existence of a duty is a question of law for the court to resolve" applies. *Baugus v. City of Florence*, 985 So.2d 413, 419, (Ala. 2007).

*Id.* at 119 (footnote omitted).

While a duty arising out of a voluntary act is generally recognized by the Alabama Supreme Court, this duty does not apply to those whom nothing has been volunteered. In *Springhill Hospitals, Inc. v. Larrimore*, 5 So.3d 513 (Ala. 2008), the Court stated:

The application of the voluntary-undertaking doctrine to a pharmacist is a question of first impression for this Court. The estate argues that courts "have held in numerous factual scenarios that pharmacists voluntarily assumed duties of care." Estate's brief at 46. The estate cites *Ferguson v. Williams*, 101 N.C. App. 265, 399 S.E.2d 389 (1991); *Baker v. Arbor Drugs, Inc.*, 215 Mich. App. 198, 205-06, 544 N.W.2d 727, 731 (1996); and *Cottam v. CVS Pharmacy*, 436 Mass. 316, 764 N.E.2d 814 (2002).

The cases cited by the estate are readily distinguishable from this one and therefore unpersuasive. In each case cited, the respective court found that the pharmacy or pharmacist had

> voluntarily undertaken a duty to the customer based on the
> interactions between the pharmacist and the customer.  None of
> those cases addresses the voluntary assumption of a duty based on
> a pharmacist's interaction with the customer's physician.  *See
> Ferguson*, 101 N.C. App. at 272, 399 S.E.2d at 393 ("A druggist
> simply has the duty to act with due, ordinary care and diligence in
> compounding and selling drugs. . . .  [H]owever, . . . *if a
> pharmacist undertakes to advise a client* concerning a medication,
> the pharmacist is under a duty to advise correctly."); *Baker*, 215
> Mich. App. at 205-06, 544 N.W.2d at 730-31 ("[T]here is no legal
> duty on the part of a pharmacist to monitor and intervene in a
> customer's reliance on drugs prescribed by a licensed treating
> physician. . . .  [However], defendant [Arbor Drugs, Inc.]
> voluntarily assumed a duty of care when it implemented the
> Arbortech Plus [computer] system and then advertised that this
> system would detect harmful drug interactions for its customers.");
> *Cottam*, 436 Mass. at 323-26, 764 N.E.2d at 821-23 ("A pharmacy,
> like any other person or entity, may voluntarily assume a duty . . .
> to provide information, advice or warnings to its customers. . . .
> [T]he scope of the duty voluntarily undertaken by a pharmacy is a
> fact-specific inquiry *based on the totality of the pharmacy's
> communications with the patient* and the patient's reasonable
> understanding, based on those communications, of what the
> pharmacy has undertaken to provide.").

*Id.* at 519-20 (alterations in original) (emphasis added).

It is apparent that the action taken by Mad Dogg to follow up on counterfeit sales was for its own benefit to avoid fraudulent competition and confusion with regard to its own product. It had no duty to warn others of counterfeit sales.  To do so would contribute to the confusion and perhaps reduce its own sales.  Perhaps e-Bay or others had such a duty; the defendant did not. There is no evidence that the plaintiff relied upon anything said or done by the defendant.

In *Spriggs v. Compass Bank*, the court stated: "However, no duty arises if the voluntary act of lender inures to the benefit of the lender and not to the benefit of the borrower."  742 So.2d 178, 181 (Ala. Civ. App. 1997) (citing *Pugh v. Butler Tel. Co.*, 512 So.2d 1317 (Ala. 1987);

*Rudolph v. First S. Fed. Sav. & Loan Ass'n*, 414 So.2d 64 (Ala. 1982); *Panger Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 410 So.2d 40 (Ala. 1982)); *see also Sanders v. Ingram Equip. Co.*, 531 So.2d 879, 880 (Ala. 1988).  Restatement of Torts, 2d, § 323 states:  One who undertakes, gratuitously or for the consideration, *to render services to another* which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care *to perform his undertaking*, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.  (Emphasis added). Note that it states, "to render services to another."

In *Dailey v. Housing Authority*, the court stated: "It is the general rule in Alabama that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person."  639 So.2d 1343, 1345 (Ala. 1994) (quoting *Moye v. A. G. Gaston Motels, Inc.*, 499 So.2d 1368, 1370 (Ala. 1986)).[4]  The defendant's motion will be granted.

This the 17th day of March, 2011.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[4]  "Foreseeability" cases cited by the plaintiff involve such relationships.